# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT GIRTS,** | : | **Case No.  1:02cv0264** |
| | : | |
| **Petitioner,** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| **vs.** | : | |
| | : | |
| **CHRIS YANAI, Warden,** | : | <u>**OPINION & ORDER**</u> |
| | : | |
| **Respondent.** | : | |

Robert Girts has petitioned the Court for a *writ of habeas corpus* pursuant to 28 U.S.C. §2254.  His petition challenges the constitutional sufficiency of his August 23, 1995 jury conviction for aggravated murder. Girts is currently serving a sentence of twenty (20) years to life.  The Court finds that each of Girts's asserted grounds for relief are either without merit or are not reviewable and must be rejected.  Subject only to the Court's comments herein relating to Girts's third and a fifth grounds for relief, the Court agrees with, and wholly **ADOPTS**, the reasoning and conclusions set forth in Magistrate Judge Limbert's *Report and Recommendation of Magistrate Judge* (Doc. 22) ("Report and Recommendation" or "R&R").  The Court ultimately adopts the magistrate judge's recommendation for dismissal.

Accordingly, Girts's petition for a *writ of habeas corpus* pursuant to 28 U.S.C. §2254 must be **DENIED,** and his case is **DISMISSED**.

I.    **PROCEDURAL HISTORY**[1]

     A.    **Girts's First And Second Trials**.

On February 9, 1993, the Grand Jury for Cuyahoga County, Ohio returned a single count indictment

charging Girts with aggravated murder pursuant to Ohio Revised Code § 2903.01.  *See* Doc.  17, Exhibit 2.

On June 3, 1993, following a jury trial, a jury returned a guilty verdict to the single count indictment. On that

same date, Girts was sentenced to life in prison.  *See* Doc. 17, Exhibit 3.

An appeal followed, and on July 28, 1994, the Ohio Court of Appeals for the Eighth Appellate District

("Eighth District Court of Appeals" or "Eighth District") found that Girts's conviction was supported by the

weight of the evidence.  The Eighth District, however, reversed the conviction on the grounds that the trial

court should have granted a mistrial when the State questioned Girts about an alleged jailhouse confession,

and, thereafter, failed to produce rebuttal testimony initially offered as the "good faith" basis for that line of

questioning.  The court's decision was docketed on August 29, 1994.  *See id.*, Exhibits 4 and 5.  On January

18, 1995, the Supreme Court of Ohio denied leave to appeal, and leave to cross-appeal.  *See id.*, Exhibits

6 and 7.

After being remanded to the trial court, this case was assigned to a new judge on February 22, 1995.

On August 9, 1995, following the second trial, a second jury convicted Girts of a single count of aggravated

murder pursuant to Ohio Revised Code § 2903.01.  From that conviction, Girts was sentenced to life

---

      [1]       The Court's recitation of the procedural history is taken substantially from the magistrate judge's R&R (Doc. 22), which sets forth the relevant background provided by the Eighth District Court of Appeals' July 24, 1997 opinion in connection with Girts's direct appeal.  *See* Doc. 17, Exhibit 23 at pp. 2-10.  The Court views, as it must, the state court's factual findings as accurate.  *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a state court shall be presumed correct.").

imprisonment without the possibility of parole for twenty (20) years.  That judgment entry was docketed on August 17, 1995.  Doc. 17, Exhibit 8.

On August 23, 1995, Girts filed a motion for new trial.  *See* Doc. 17, Exhibit 9.  The State filed its opposition on September 15, 1995.  *See id.*, Exhibit 10.  On that same day, the trial court denied Girts's motion.  That judgment entry was docketed on September 29, 1995.  *See id.*, Exhibit 11.

**B.     Girts's Direct Appeal From The Second Conviction.**

On September 19, 1995, Girts filed with the Eighth District a notice of appeal from the August 17, 1995 judgment of conviction and sentence.  *See* Doc. 17, Exhibit 13.[2]  On October 31, 1995, Girts filed a second notice of appeal from both the conviction/sentence and the trial court's denial of his motion for new trial entered on September 29, 1995.  *See id.*, Exhibit 15.  On December 14, 1995, the Eighth District consolidated the two appeals.  *See id.*, Exhibit 16.

On August 5, 1996, Girts filed his appellate brief in which he set forth eleven assignments of error, to *wit*:[3]

> I.      The trial court denied the appellant his protection against double jeopardy as guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution and Article 1, Section 10 of the Ohio Constitution when it denied his motion to dismiss.

> II.     The appellant was denied his right to a speedy trial after his first conviction was reversed by the court of appeals in violation of the Due Process Clauses of the Ohio and Federal Constitutions.

---

[2]      As will be seen *infra*, Girts filed various items *pro se*.  Unless identified as *pro se* filings, however, all referenced filings are presumed to have been made through counsel.

[3]      Minor grammatical and/or typographical errors have been corrected in the Court's recitation of Girts's assignments of error.  Otherwise, each assignment appears as asserted by Girts.

III.    The trial court denied the appellant his constitutional right to a trial by an
        impartial jury free from outside influences when it permitted the alternate
        jurors to sit in the jury room during deliberations in violation of Crim. R. 24(f)
        and the Fourteenth Amendment of the U.S Constitution and *Sheppard v.
        Maxwell* (1996) 384 U.S. 333.

IV.     The appellant was denied effective assistance of counsel when counsel failed
        to object to the alternate jurors being present in the jury room during
        deliberations in violation of the Sixth Amendment of the U.S. Constitution and
        Article 1, Section 10 of the Ohio Constitution.

V.      The evidence pertaining to the cause of death is insufficient to sustain the
        appellant's conviction for aggravated murder.

VI.     The evidence is insufficient as to the manner of death to sustain the
        appellant's conviction for aggravated murder.

VII.    The verdict is against the weight of the evidence.

VIII.   The trial court improperly denied the appellant's motion for new trial and
        denied  the appellant due process under the Fourteenth Amendment

IX.     The trial court erred in giving the reasonable doubt instruction found in
        R.C. 2901.05(D) in violation of due process contained in the Ohio and
        federal constitutions.

X.      The prosecutor's closing argument denied the appellant due process and a
        fair trial as guaranteed by the U.S. Constitution when he improperly
        commented on the appellant's right to remain silent.

XI.     The trial court improperly denied the appellant's motion for mistrial after
        prejudicial hearsay testimony was permitted and the appellant was denied
        due process under the Fourteenth Amendment of the U.S. Constitution.

Doc. 17, Exhibit 17.  On September 5, 1996, Girts filed a *pro se Supplemental Brief and Assignments of*

*Error*, in which he identified six assignments of error, to *wit*:

4

     A.      The appellant was denied protection against double jeopardy as guaranteed by the 5th and 14th Amendments and Article I, Section 10 of the Ohio Constitution when the state court commenced a second trial.

     B.      Girts's right to due process under the 14th Amendment was violated when the State failed to adduce enough evidence on each essential element of the crime of which he was convicted to convince a rational juror beyond a reasonable doubt [of his guilt].

     C.      The prosecutor's closing argument denied the appellant due process and a fair trial as guaranteed by the U.S. Constitution when he improperly commented on the appellant's right to remain silent.

     D.      Appellant's 6th and 14th Amendment right to confront his accusers, and his right protected under the Ohio Constitution, Article I, Section 10, to confront his accusers "face-to-face[,]" was denied when out-of-court declarations were admitted against him in the absence of any opportunity to cross-examine the declarant[,] and where there was no solid proof of the declarant's "un-availability[,]" and there were indications the declaration was not reliable.

     E.      Appellant's trial counsel rendered ineffective assistance at trial because the cumulative effect of counsel's omissions and deficient performance was prejudicial and rendered the trial fundamentally unfair.

     F.      The cumulative effect of all the errors and all plain errors denied appellant due process of law and his right to a fair trial under the Ohio and United States Constitutions.

Doc. 17, Exhibit 18. On October 3, 1996, Girts filed a second *pro se Supplemental Brief and Assignments of Error*, in which he asserted the same assignments of error. *See id.*, Exhibit 19. On January 30, 1997, the State filed its opposition. *See id.*, Exhibit 20. On February 7, 1997, Girts filed a reply brief. *See id.*, Exhibit 21. On February 10, 1997, Girts also filed a *pro se* reply brief. *See id.*, Exhibit 22. On June 12, 1997, the Eighth District affirmed the trial court's judgment of conviction and sentence. This entry was <u>docketed</u> on July 24, 1997. *See id.*, Exhibit 23.

On June 23, 1997, Girts filed a motion for reconsideration with the Eighth District.  *See* Doc. 17, Exhibit 24.  On July 3, 1997, the State filed its opposition.  *See id.*, Exhibit 25.  On July 24, 1997, the Eighth District denied Girts's motion for reconsideration.  *See id.*, Exhibit 26.

On July 25, 1997, Girts filed a *pro se* notice of appeal and a memorandum in support of jurisdiction with the Supreme Court of Ohio.  *See* Doc. 17, Exhibits 27 and 28.  Girts asserted twelve propositions of law, to *wit*:

> **Proposition of Law One:**      A defendant's right to due process under the Fourteenth Amendment is violated when the State fails to adduce enough evidence on each essential element of the crime of which he was convicted to convince a rational juror beyond a reasonable doubt of guilt.

> **Proposition of Law Two:**      Under the "law-of-the-case" doctrine, the decision of a reviewing court remains the law of the case on the legal questions involved for all subsequent proceedings.

> **Proposition of Law Three:**    Bad faith conduct by the prosecutor which threatens harassment of the accused will bar reprosecution [sic] under the Double Jeopardy Clause of the Ohio Constitution, Article I, Section 10, notwithstanding that a mistrial is granted upon the accused's own motion.

> **Proposition of Law Four:**     The Federal Constitution prohibits successive prosecutions under the Double Jeopardy Clause when the prosecutor intended to provoke the defendant to move for a mistrial.

> **Proposition of Law Five:**     A criminal defendant may seek a pre-trial hearing pursuant to [Ohio Revised Code] § 313.19 to challenge a coroner's verdict as to the cause and manner of death.

> **Proposition of Law Six:**      A defendant must receive a speedy trial after his conviction is reversed on appeal to comply with the due process clauses of the Ohio and Federal Constitutions.

> **Proposition of Law Seven:**    When the cumulative effect of counsel's omissions and  d e f i c i e n t performance renders the trial fundamentally unfair, a defendant is entitled to a new trial.

**Proposition of Law Eight:**    A prosecutor's closing argument denies a defendant due process and a fair trial when he improperly comments on the defendant's right to remain silent.

**Proposition of Law Nine:**    When a new judge, who did not preside over the trial, rules on a motion for new trial, due process requires the new judge to hold a hearing and review the transcripts to make his own finding on the merits.

**Proposition of Law Ten:**    A defendant is denied his right to confront his accusers under the State and Federal Constitutions when out-of-court declarations are admitted against him in the absence of any opportunity to cross-examine the declarant and there are indications that the declaration is not reliable.

**Proposition of Law Eleven:**   Due process of law is violated when the cumulative effect of all the errors and all plain errors denies a defendant a fair trial.

**Proposition of Law Twelve:** A defendant is denied due process when the appellate court, in upholding a defendant's conviction, conducts its review in a patently unfair manner.

Doc. 17, Exhibit 28.  On August 20, 1997, the State filed its response.  *See id.*, Exhibit 29.  On October 15, 1997, the Supreme Court of Ohio denied leave to appeal and dismissed Girts's appeal as not involving any substantial constitutional question.  *See id.*, Exhibit 30.  Girts did not appeal that decision to the United States Supreme Court.

On October 23, 1997, Girts filed a *pro se* motion for reconsideration in the Supreme Court of Ohio. *See* Doc. 17, Exhibit 31.  On December 10, 1997, the Supreme Court of Ohio denied Girts's motion.  *See id.*, Exhibit 32.

**C.    Girts's Petition For Post-Conviction Relief In The Trial Court.**

On January 22, 1996, Girts filed a *pro se* petition for post-conviction relief in Cuyahoga County Court of Common Pleas, in which he alleged ineffective assistance of trial counsel.  *See* Doc. 17, Exhibit 33.  On February 28, 1996, the State filed its opposition.  *See id.*, Exhibit 34.  On May 10, 1996, Girts filed a *pro*

*se* motion for leave to supplement/amend his petition for post-conviction relief. *See id.*, Exhibit 35. On

November 24, 1997, the court denied Girts's petition and issued findings of fact and conclusions of law. *See*

*id.*, Exhibits 36 and 37.

On December 24, 1997, Girts filed a *pro se* notice of appeal to the Eighth District Court of Appeals

from the denial of his petition for post-conviction relief. *See* Doc. 17, Exhibit 39. On March 27, 1998, Girts

filed a *pro se* brief in support of his appeal in which he set forth various assignments of error, to *wit*:

I.   Appellant was denied due process and equal protection of the laws in
     contravention of the Ohio and United States Constitutions when the trial
     court arbitrarily refused to appoint post-conviction counsel to an indigent
     defendant, where other indigent defendants are appointed counsel as a
     matter of right pursuant to O.R.C. § 120.16, *et seq.*

II.  The trial court committed reversible error by failing to issue findings of
     fact and conclusions of law regarding appellant's supplemental petition           for
     post-conviction relief filed on May 10, 1996.

III. The trial court erred to the prejudice of appellant when it denied appellant
     a hearing on his petition for post conviction relief.

IV.  Appellant's trial counsel rendered ineffective assistance at trial because the
     cumulative effect of counsel's omissions and deficient performance was
     prejudicial and rendered the trial fundamentally unfair.

Doc. 17, Exhibit 40. On May 15, 1998, the State filed its opposition. *See id.*, Exhibit 41. On May 27, 1998,

Girts filed a *pro se* reply brief. *See id.*, Exhibit 42. On December 21, 1998, the Eighth District dismissed the

case for want of a final appealable order and remanded the matter for additional findings of fact and

conclusions of law on the issues raised in the supplemental petition. *See id.*, Exhibit 43.

On November 19, 1999, the trial court issued findings of fact and conclusions of law denying Girts's

petition for post conviction relief. *See* Doc. 17, Exhibit 44. Thereafter, on December 15, 1999, Girts filed

8

another *pro se* notice of appeal to the Eighth District, this time from the second denial of his petition for post

conviction relief.  *See* Doc. 17, Exhibit 46.  On January 27, 2000, Girts filed a *pro se* brief in support of his

appeal, in which he again set forth various assignments of error, to *wit*:

> I.  Appellant was denied due process and equal protection of the laws in
> contravention of the Ohio and United States Constitutions when the trial
> court arbitrarily refused to appoint post conviction counsel to an indigent
> defendant, where other indigent defendants are appointed counsel as a
> matter of right pursuant to O.R.C. § 120.16, et seq.
>
> II.  The trial court erred to the prejudice of appellant when it denied appellant
> a hearing on his petition for post-conviction relief.
>
> III.  Appellant's trial counsel rendered ineffective assistance at trial because the
> cumulative effect of counsel's omissions and deficient performance was
> prejudicial and rendered the trial fundamentally unfair.

Doc. 17, Exhibit 47.  On March 17, 2000, the State filed its opposition.  *See id.*, Exhibit 48.  On March 31,

2000, Girts filed a *pro se* reply brief.  *See id.*, Exhibit 49.  On December 4, 2000, the Eighth District affirmed

the judgment of the trial court.  *See id.*, Exhibit 50.

On January 3, 2001, Girts again filed a *pro se* notice of appeal and memorandum in support of

jurisdiction in the Supreme Court of Ohio.  *See* Doc. 17, Exhibits 51 and 52.  Girts asserted one proposition

of law, to *wit*:

> **Proposition of Law One:**       A defendant is denied the effective assistance of trial counsel when
> the cumulative effect of such counsel's omissions and deficient performance prejudices the outcome
> of the trial and renders the trial fundamentally unfair.

Doc. 17, Exhibit 52.  On February 2, 2001, the State filed its response.  *See id.*, Exhibit 53.  On April 4,

2001, the Supreme Court of Ohio dismissed Girts's appeal as not involving a substantial constitutional

question.  *See id.*, Exhibit 54.  Girts did not appeal that decision to the United States Supreme Court.

9

**D.**    **Girts's Petition for a *Writ of Habeas Corpus*.**

On February 12, 2002, Girts filed the present Petition for *Writ of Habeas Corpus* with this Court, in which he asserted six grounds for relief, to *wit*:[4]

> **GROUND ONE:**  The trial court denied Girts his protection against double jeopardy guaranteed by the Fifth and Fourteenth Amendments when it denied his motion to dismiss the charges against him.
>
>> **SUPPORTING FACTS:**  The trial court erred by failing to grant Girts's motion to dismiss the charges against him on the grounds of double jeopardy. The court of appeals reversed Girts's previous conviction for aggravated murder because the State exhibited bad faith trial tactics at Girts's first trial that goaded Girts into seeking a mistrial. Under these circumstances, this second prosecution for aggravated murder was barred.
>
> **GROUND TWO:**  Girts was not convicted upon proof beyond a reasonable doubt.
>
>> **SUPPORTING FACTS:**  Girts was convicted of the aggravated murder of his wife. The State's theory of the case was that Girts poisoned his wife with cyanide.  The State failed to produce sufficient evidence to demonstrate the cause of death, however.  The forensic evidence of cyanide poisoning did not correspond to the classic physical signs that appear in the body of a typical cyanide poisoning victim. In addition, the State failed to provide the manner of death – how Girts would have poisoned his wife.  Consequently, the evidence presented by the state was insufficient.
>
> **GROUND THREE:**  Girts's due process rights and his right to a fundamentally fair trial were violated when the prosecutor improperly commented on Girts's right to remain silent.
>
>> **SUPPORTING FACTS:**  During closing arguments, the prosecutor first improperly commented that Girts's oral statements were [not refuted]. Second, the prosecutor improperly argued that Girts had at least three chances to tell the police he had ordered cyanide and that only one person

---

[4]      Minor grammatical and/or typographical errors have been corrected in the Court's recitation of Girts's grounds for relief.  Otherwise, the grounds and supporting facts appear as asserted by Girts.

could tell the jury how it was ingested. Third, the prosecutor improperly argued that Girts was the only person who could tell the jury how the poison was introduced.

**GROUND FOUR:** Girts's due process right to a fundamentally fair trial [was] violated when the trial court failed to grant a mistrial after prejudicial hearsay testimony came out at trial.

> **SUPPORTING FACTS:** The State elicited testimony from witness Louis Borden that Kathy Latimer-Bloesinger told him that "They [she and Girts] were going through this scenario of ways this could have been accomplished, this death. And she didn't tell me what scenario was put forward, but she did say that [Girts] said to her, 'that's not the way I did it.'" Trial counsel objected and that objection was sustained. Trial counsel then requested a mistrial which was denied. The trial court's denial of the mistrial was error.

**GROUND FIVE:** Girts was denied the effective assistance of trial counsel in violation of his Sixth and Fourteenth Amendment rights under the U.S. Constitution.

> **SUPPORTING FACTS:** 1) Trial counsel failed to object to the allowance of the alternate jurors in the jury deliberation room. The trial court violated Ohio Crim. R. 24(F) by permitting the two alternate jurors to enter the jury room and listen to the jury's deliberations. Trial counsel failed to object to this. This failure prejudiced Girts. 2) Trial counsel failed to object to the prosecutor's comments during closing arguments that Girts remained silent. During the closing arguments, the prosecutor made three objectionable comments. First, the prosecutor commented that Girts's oral statements were unrefuted.  Second[,] the prosecutor argued that Girts had at least three chances to tell the police he had ordered cyanide and that only one person can tell you how it was ingested. Third, the prosecutor argued that Girts was the only person who could tell the jury how the poison was introduced. These comments were improper and trial counsel should have objected. Trial counsels' failure to object prejudiced Girts.

**GROUND SIX:** Girts was denied the effective assistance of trial counsel in violation of his Sixth and Fourteenth Amendment rights under the U.S. Constitution.

> **SUPPORTING FACTS:** 1) Trial counsel failed to adequately prepare for trial because counsel failed to investigate the relevant facts and interview the relevant witnesses.  First, the private investigator appointed by the court did not conduct any independent investigation of this case in that his report

11

contained no information that could have been obtained from transcripts and records of the first case. The investigator also never interviewed Girts. Second, trial counsel failed to interview a number of witnesses including, but not limited to: Nick Giarola, Charles Zabor, Philip Rothenburger, Robert Deighton, Guy Sciulli, Mark Bollinger, Kenneth Willham, Thomas Zabor, Gary Beeman, Elaine Latimer, Michael Greenwald, Philip Barragate, Helen and George Kabat, Patricia Pellman, Lambert Dehler, George T. Doyle, and Ronald Fields. These failures of trial counsel constituted deficient performance that prejudiced Girts's case. 2) Trial counsel failed to protect Girts from an invalid waiver of his right to testify and prevented Girts, who desired to testify, from testifying at the second trial. Girts wanted to testify at trial but was prevented from doing so by his attorneys. Girts's attorneys told the Girts that he had nothing to add to the defense. Girts's attorneys did not explain to Girts that his right to testify could only be waived by him. 3) Trial counsel failed to have all side bar proceedings at the second trial recorded. Trial counsel failed to have all the proceedings recorded as mandated under Ohio Crim. Rule 22, and as specifically requested by Girts. 4) Trial counsel failed to challenge the coroner's verdict of "homicide" through a pretrial motion prior to the commencement of the second trial. Counsel failed to request a pre-trial hearing on the inadmissibility of the coroner's testimony pursuant to Ohio Revised Code § 313.19 and as specifically requested by the Girts during pre-trial proceedings. 5) The cumulative impact of trial counsel's errors prejudiced Girts.

Doc. 1. On April 29, 2002, Respondent filed an *Answer/Return of Writ* (Doc. 12), and moved this Court to dismiss Girts's petition. On June 5, 2002, Girts filed a *Traverse to Respondent's Answer/Return of Writ*. *See* Doc. 20.

On February 27, 2002, this case was automatically referred to Magistrate Judge George J. Limbert for review and preparation of a report and recommendation to this Court. On May 29, 2003, Magistrate Judge Limbert issued an R&R (Doc. 22), in which he concluded that none of Girts's grounds for *habeas* relief were meritorious. He recommended, therefore, that Girts's petition be dismissed with prejudice. On July 3, 2003, Girts filed *pro se Objection to the Magistrate's Report and Recommendation* (Doc. 24)

("Objections"), wherein he set forth thirteen (13) objections to the R&R.  Thereafter, the Court took the matter under advisement.

## II.    FACTUAL BACKGROUND[5]

Girts and his wife, the victim, lived in a house that adjoined a funeral home where Girts worked as a funeral director and embalmer.  On the morning of September 2, 1992, Girts and several others began driving back from Chicago, Illinois to Parma, Ohio after having helped Girts's brother move.  Girts's wife, who had not gone to Chicago, remained at home during the morning because she was scheduled to work at noon that day.  When she did not arrive at work on time, a co-worker telephoned the funeral home and expressed concern over her unusual absence.  A funeral home employee noticed Mrs. Girts's car in the driveway, so he checked the house.  When he found the screen door to the house open he called inside.  When no one responded, he entered the house and discovered Mrs. Girts's dead body in the bathtub.

The police found no evidence of foul play, nor any obvious signs of suicide.  A razor floating in the bath water, a hot curling iron resting on a nearby dressing table, and the couple's dog roaming in the yard led the police to conclude that Mrs. Girts died suddenly while bathing.  Because the police could not readily determine a cause of death, they transported Mrs. Girts's body to the coroner's office for an autopsy.

---

[5]    As with the procedural history, the Court's recitation of the factual background is taken substantially from the magistrate judge's R&R (Doc. 22), which was based on information provided in an opinion issued by the Eighth District, which considered Girts's direct appeal from his second trial and conviction.

13

During the autopsy, the coroner noted no obvious cause of death.  The coroner did find an undigested meal of pasta salad in Mrs. Girts's stomach.  He also observed lividity – i.e., reddening of her skin – which is typically found in bodies that have been exposed to carbon monoxide.  Carbon monoxide testing, however, revealed that there were no significant levels of carbon monoxide present.  The coroner, therefore, listed no cause of death.

Around September 20, 1992, Girts telephoned the police and told them he had found a handwritten note from his wife, which might explain her death.  The undated note stated, "I hate Cleveland. I hate my job. I hate myself."  Girts explained that he found the note underneath some papers in his briefcase.  Further, he told police that his wife had been despondent over the couple's recent move to the Cleveland, Ohio area.  He explained that she had difficulty finding work, and worried that she had a weight problem.  Girts also told police that his wife had suffered three miscarriages, and had been trying to cope with the thought that she might not be able to have children.

At about the same time, the coroner ordered the department toxicologists to perform additional tests on fluids that had been taken from Mrs. Girts's body.  Specifically, he asked the toxicologists to determine whether any poisons were present.  An initial test for potassium cyanide was discarded when the toxicologists discovered the reagents used in the testing process had been compromised.  New reagents were obtained, and a later test yielded a positive result for potassium cyanide at about twice the minimum lethal dose.  The coroner verified the result by having the Franklin County Coroner's Office conduct a test for cyanide by utilizing a different methodology.  The Franklin County Coroner's tests yielded virtually identical results.  Following these tests, the coroner then listed the cause of death as "homicide."

14

Thereafter, the police returned to Girts's house and executed a search warrant, pointedly telling Girts that they were looking for cyanide or other poisons.  Girts cooperated, but the police found nothing.  The police questioned the funeral home operators about possible uses for cyanide in the embalming process, but found no evidence that the funeral home received cyanide from any of its suppliers.  The funeral home director later recalled a conversation with Girts, in which they discussed how the police had investigated the funeral home supply shipments for deliveries containing cyanide.  He testified that Girts told him, "[t]hat is not where I got it from."

The evidence did not show that the police had any suspects until they broadcast a plea for assistance through a television crime watch service.  As a result of the broadcast, Girts's commanding officer in the army reserves came forward in January 1993 with information that she had provided Girts with 2 grams of potassium cyanide.  She explained that Girts knew she worked as a chemist in her civilian job, and that, in the Spring of 1992, he asked her if she could get him a small amount of cyanide for use in controlling ground hogs on his property.  She did not immediately send the cyanide, however.  She later discovered that Girts had left his business card on her desk, with a notation in Girts's handwriting stating, "thank you for your help."  In the lower corner of the card Girts wrote "KCN," the chemical abbreviation for potassium cyanide.  Upon seeing the business card, she remembered Girts's request, so she sent "a couple grams" of cyanide to the funeral home address listed on the business card.  She explained that she came forward with the information after learning that Girts's wife died of cyanide poisoning.

When confronted with evidence that he had obtained cyanide, Girts told police that he used it to control ground hogs on the property.  A funeral home employee, however, insisted that he had no knowledge of a ground hog problem, and produced records showing that squirrels were the only pest control problem

15

on the property.  The city pest control officer also stated that he had received no complaints about ground hogs.  A pest control company representative conceded that cyanide might have been used for pest control well in the past, but that in ten years of business, she had not used any products containing cyanide.

Other people soon came forward with information that increased the focus on Girts.  One of Girts's business associates recalled a conversation in which Girts abruptly interrupted her to ask if she could show him the measurement of "a gram."  When she asked why he needed the information, Girts said that he needed to measure some medicine for his dog.  Girts's veterinarian, however, stated that he did not proscribe medication for Girts's dog that would require "measuring."

One of Girts's funeral home colleagues described a conversation in which Girts told him that Mrs. Girts had committed suicide.  When the colleague wondered how Mrs. Girts could have obtained cyanide, Girts responded that "she probably got it down on West 25th Street where she worked because she came in contact with a lot of low lives."  In a subsequent conversation, the colleague again expressed confusion as to how Mrs. Girts could have obtained cyanide, to which Girts responded, "someone at the coroner's office probably spilled some of it because they keep it there."

Another funeral home colleague testified that when the ambulance came to transport Mrs. Girts's body, Girts yelled to the drivers that they should take the body to Parma General Hospital.  The police later learned that, at some point, Girts had worked for the Lorain County Coroner. They speculated that his experience there had likely informed him that, absent a known cause, the coroner's office investigates all deaths and performs autopsies that are much more complete than those performed by hospital personnel.

The police also began to question the theory that Mrs. Girts committed suicide because they did not believe she had a motive to do so.  Several close friends told the police that they spoke with Mrs. Girts shortly

16

before her death.  They stated that she was in good spirits.  They found nothing unusual about her behavior and noted that she looked forward to moving into a house she and her husband had recently purchased.  One friend did say, however, that she met with Girts shortly before his wife's death and he told her Mrs. Girts was depressed about living in Cleveland.  That statement contradicted the friend's perceptions, however.  Just three days before her conversation with Girts, that same friend had spent the weekend with the couple and found nothing unusual about Mrs. Girts's demeanor.

The State settled on two motivating factors in support of the murder charge.  First, it discovered that Girts had a fitful affair with another woman who had refused to continue the affair as long as Girts remained married.  Girts first became involved with the woman for a short period in 1980, but she broke off the affair when she discovered Girts was lying about his marital status with a previous wife.  The affair resumed briefly in either 1985 or 1986, but ended shortly thereafter by mutual agreement.  It resumed again in February 1992.  Girts told the woman that he was remarried, but that he and his wife were finalizing a divorce.  The intimate portion of their relationship ended in late May 1992, although they remained in contact for several more months.  Girts stipulated he was not a party to any divorce action.

Girts called this woman shortly after Mrs. Girts's death and informed her that Mrs. Girts had died from an aneurysm.  Thereafter, they spoke twice.  In the early part of October 1992, the woman received an early morning call from Girts, in which he said, "Miss Bethea, this is Robert Girts.  We'll have to put the decorating of my house on hold. Something really bizarre has happened."  When she asked what had happened, Girts replied, "I'm being investigated for my wife's death."  He then hung up.  The woman found the conversation unusual because Girts had never referred to her as "Miss" and that, while she worked as an interior designer, she had not discussed decorating Girts's house.

17

The woman called police and informed them of her conversation with Girts. Girts telephoned her late that evening.  When he heard that she had telephoned the police and that they would be coming to question her, he told her that there was no harm in her doing design work for him and that she should "be brief" during questioning.

The second motivating factor arose from Girts's financial status.  Girts stipulated that he received just over $50,000 from life insurance policies taken on Mrs. Girts's life.  The State tied this money to Girts's purchase of a house, and his desire to invest $10,000 in another funeral home, in which he was to be a silent partner.

Girts's defense consisted primarily of evidence showing he had been in Chicago at the time of Mrs. Girts's death – a fact the State did not dispute – and expert testimony rebutting the State's findings relating to the manner and cause of death.  In addition, Girts's sister-in-law testified that she ate from a bowl of pasta salad she found in Girts's refrigerator but suffered no ill effects.

Girts's expert testified he would have listed the cause of death as "undetermined," because, in his opinion, the level of cyanide found in Mrs. Girts's body did not correspond with the classic signs of cyanide poisoning he would have expected to find.  He testified that cyanide basically poisons all the cells of the body to the point where they cannot use oxygen.  Because the cells cannot use oxygen, the blood becomes super-oxygenated, thus giving the body its reddish appearance.  A cyanide victim can breathe, but, nonetheless, experiences the sensation and effects of asphyxiation.  The onset of cyanide poisoning is marked by dizziness or faintness with rapid breathing.  Convulsions, palpitations or seizures may follow before the victim falls into a comma and dies.

The outward indicia of cyanide ingestion include burning around the mouth and throat areas, uniform lividity of other major internal organs, petechiae or small bleeding points usually found in the stomach, incontinence of both urine and fecal matter and collection of fluid in the lungs.  Of these signs, only the lividity and collection of fluid in the lungs were present in Mrs. Girts's case.  The expert thought that the lividity and collection of fluid, however, could be explained by other factors, such as immediate refrigeration of the body after being taken from warm water.

Following the parties' presentation of proofs at the second trial, each provided closing arguments to the jury.  During the State's closing, the prosecutor made three statements that arguably commented on Girts's failure to provide the police with certain information and/or testify at the trial to explain how Mrs. Girts could have come into contact with the cyanide that killed her.  These statements, outlined and discussed in greater detail *infra* at Section IV-C-1, serve as the basis for Girts's:  1) third ground for *habeas* relief, based on the view that they violated his Fifth Amendment right against self-incrimination; and 2) fifth ground for *habeas* relief, based on the view that his trail counsel's failure to object to the statements' admission violated his Sixth Amendment right to effective assistance of counsel.

## III.   THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION  AND GIRTS'S OBJECTIONS THERETO.

As outlined in greater detail *supra*, Girts's petition asserts six grounds for relief.  In sum, he alleges that the trial court:  1) denied him protection against a double jeopardy violation (Ground One); 2) errantly convicted him based on insufficient evidence (Ground Two); 3) violated his 5th Amendment right against self incrimination by allowing the prosecutor to comment on his decision to remain silent (Ground Three); 4) denied him a fundamentally fair trial by failing to grant a mistrial based upon the admission of prejudicial hearsay

testimony (Ground Four); and 5) violated his 6th Amendment right to effective assistance of counsel by denying relief based on Girts's arguments that his counsel was ill-prepared and failed to make necessary objections (Grounds Five and Six).

### A. The Magistrate Judge's Report And Recommendation.

The R&R rejects each of Girts's asserted grounds for relief and recommends dismissal with prejudice of his petition. In sum, the R&R's analysis as to each of Girts's grounds for relief is as follows.

### 1. Double Jeopardy (Ground One).

As to the alleged double jeopardy violation, Girts argued that the prosecution's "bad faith" tactics goaded Girts into seeking, and obtaining, a mistrial in his first trial. Based on the prosecutor's alleged bad faith encouragement toward a mistrial, Girts argued that the prosecution should have been barred from pursuing a second prosecution for the same crime.[6] Concluding that the state appellate court below correctly identified the relevant legal standard set forth in *Oregon v. Kennedy*, 456 U.S. 667 (1982) – that a double jeopardy violation may result if a defendant is prompted by prosecutorial misconduct designed to goad the defendant into requesting a mistrial – the magistrate judge determined that, based on the facts of this case, the state courts did not unreasonably apply the clearly established federal law set forth in *Kennedy*.

The state appellate court reasonably observed that there was no evidence of a sequence of overreaching by the State prior to the line of questioning relating to the alleged jailhouse confession. It also

---

[6] Girts obtained a mistrial based on the prosecution's failure to provide testimony it promised to proffer as its good faith basis for pursuing a line of questioning relating to an alleged jailhouse confession. When the prosecution failed to keep its promise to provide the requisite supporting testimony, the trial court granted a mistrial.

took into account that the State opposed Girts's motion for a mistrial and demonstrated no outward desire to take the case away from the jury in the first trial.  As such, the magistrate judge determined that the appellate court reasonably concluded that any misconduct relative to the State's presentation of its case amounted only to negligence and not intentional encouragement for Girts to seek a mistrial.

Accordingly, the magistrate judge concluded that no double jeopardy violation occurred and recommended dismissal of Girts's petition as to that ground.

### 2.    Insufficiency Of The Evidence (Ground Two).

As to Girts's argument that the State failed to produce sufficient evidence to demonstrate the *cause* and *manner* of Mrs. Girts's death, the magistrate judge determined that the state trial and appellate courts did not unreasonably apply clearly established federal law when they found that the state had presented sufficient evidence, circumstantial or otherwise, to show that:  1) Mrs. Girts died from intentional cyanide poisoning (i.e. the *cause* of death); and  2) Girts had not only obtained cyanide in the past, but that he had a familiarity with the substance and its effects on the human body (i.e. the *manner* of death).

The magistrate judge identified the correct legal principles relative to the state appellate court's, as well as a federal *habeas* court's, review based on a "sufficiency of the evidence argument."  In sum, so long as it can be reasonably said that the evidence presented could have led to the verdict that resulted, an appellate court's refusal to reverse is not unreasonable, which is the standard of review employed by a federal *habeas* court when considering the propriety of the state court's conclusion.

Accordingly, because the magistrate judge concluded that the state appellate court did not unreasonably apply established federal law – i.e., an allegation that a verdict was entered upon insufficient

evidence states a federal "due process" claim under the 14th Amendment – he recommended dismissal of Girts's petition as to that ground.

### 3. Prosecutorial Misconduct (Ground Three).

As to Girts's argument that his 5th Amendment right against self-incrimination was violated by virtue of various alleged references by the prosecutor to his decision to remain silent (i.e., not testify), the magistrate judge concluded that this issue was procedurally defaulted – and, therefore, not reviewable by a federal *habeas* court – because: 1) Girts failed timely to object to the statements when made at trial, which resulted in a "plain error" review by the state appellate court; and 2) Girts could not demonstrate justifiable "cause" for his failure to object at trial, nor "prejudice" resulting therefrom, such that the procedural default could be overcome.

Though the magistrate judge ultimately based his recommendation to dismiss Girts's petition, as to this ground on procedural default, he went on to discuss the merits of Girts's argument and further concluded that none of the prosecutor's statements amounted to inappropriate references to Girts's decision to remain silent.

### 4. Inappropriate Admission Of Prejudicial Hearsay Testimony (Ground Four).

As to Girts's argument that he was denied a fundamentally fair trial when the trial court failed to grant a mistrial after the introduction of arguably prejudicial hearsay testimony, the magistrate judge concluded that, in the context of the entire record, fundamental unfairness did not result. As outlined in greater detail at pages 41 to 43 of the R&R, Girts objected at trial to the admission of certain hearsay testimony. Based on his objection, which was premised purely on the application of state law (i.e., state evidentiary rules), the trial court struck the challenged testimony from the record and issued a curative instruction to the jury. Because

22

a federal *habeas* court cannot review a state court's application of state law, Girts necessarily couched his argument here in constitutional terms by asserting that the measures employed by the trial court relative to the hearsay testimony were insufficient, resulting in a fundamentally unfair trial – i.e., a federal "due process" claim under the 14th Amendment.[7]

Considering that the prosecutor clearly had a good faith basis for presenting the *arguably* inappropriate testimony – to refute the defense's theory that the witness's testimony was a recent fabrication – and that the trial court employed every reasonable measure to cure any state law violation (e.g., striking the testimony and providing a curative jury instruction), the magistrate judge reasonably concluded that "fundamental unfairness" had not occurred.  Further, he properly determined that a *de novo* review of the state court's application of its own state's laws would be inappropriate in any event, and that a federal *habeas* court would be hard-pressed to give constitutional effect to debatable violations of state evidentiary rules.  *See Dowling v. U.S.*, 493 U.S. 342 (1990) (state rules of evidence are not constitutionally based).

Accordingly, because *habeas* review of this asserted ground for relief is inappropriate, and because there was no apparent fundamental unfairness in any event, the magistrate judge recommended dismissal of Girts's petition as to this ground.

###             5.     Ineffective Assistance Of Trail Counsel (Grounds Five and Six).

Finally, the magistrate judge collectively considered Girts's two "ineffective assistance of counsel" arguments and determined that neither was meritorious.  Girts's first ineffective assistance of counsel argument

---

[7]     Notably, Girts's argument on this issue in his direct appeal to the Eighth District was limited to alleged violations of Ohio Rules of Evidence 602, 801 and 802.  Doc. 17, Exhibits 17 and 25.

addressed his trail counsel's failure to object to: 1) the trial court permitting alternate jurors to remain in the jury room during the deliberations; and 2) statements made by the prosecutor that arguably violated Girts's 5th Amendment right against self-incrimination (i.e., Girts's third ground for relief).

As to the alternate jurors issue, the magistrate judge concluded that the state court of appeals properly determined that trial counsel's failure to object did not fall below the requisite standard of performance because: 1) there is no *per se* rule under Ohio law that alternate jurors cannot sit in on deliberations; and 2) there was no evidence that the alternate jurors actually participated in, or – by their presence – imposed a chilling effect upon, the deliberations.

As to the prosecutorial misconduct issue, the magistrate judge deferred to his prior analysis of the "cause" element relative to Girts's procedural default of his third ground for relief, and concluded that trial counsel's failure to object did not amount to constitutional ineffective assistance of counsel.  Accordingly, he recommended that these arguments be rejected.

Girts's second ineffective assistance of counsel argument addressed his trial counsel's alleged: 1) deficient investigation, preparation, and performance; and 2) inappropriate waiver of Girts's individually-held right to choose to testify.  The magistrate judge properly disregarded the deficiency argument based on the fact it was previously, and unsuccessfully, litigated in the state courts, and because Girts failed to demonstrate how the outcome of the trial would have been different given the State's evidence that he had acquired cyanide in the past, knew of its function, and had a familiarity with autopsy protocol.  These facts, in conjunction with the coroner's testimony and toxicology report, in the absence of compelling argument from Girts, which he has not made, render an "ineffective assistance of counsel" argument based on deficient investigation (or the like) facially unavailing.

Similarly, as to Girts's argument that his trail counsel prevented him from testifying, and thereby unlawfully waived a right that only Girts could waive, the magistrate judge correctly concluded that Girts has failed to present competent evidence, short of his self-serving affidavit attached to his petition for post-conviction relief, to demonstrate that he was prevented from testifying – as opposed to choosing not to testify based upon counsel's advice. The magistrate judge insightfully noted that Girts testified at his first trial, which clearly establishes that he <u>knew</u> of his right to do so. As nothing in the record indicates that Girts desired to testify or was prevented from doing so, the magistrate judge found that Girts's argument to the contrary now is not well taken. Accordingly, the magistrate judge ultimately recommended dismissal of Girts's petition.

**B.    Girts's *Pro Se* Objections To The R&R.**

In response to the R&R, Girts filed thirteen (13) *pro se* Objections (Doc. 24), most of which primarily take issue with factual findings referenced by the magistrate judge – and in some cases, but not all, the legal conclusions flowing from the allegedly erroneous facts. In sum, Girts objects to the magistrate judge's findings that:

1.    "On the morning of September 2, 1992, Petitioner and several others began driving back from Chicago to Parma, Ohio . . . ." Doc. 22 at 2.

2.    ". . . the couple's dog [was roaming] in the yard . . . ." Doc. 22 at 2.

3.    "When confronted with evidence that he obtained cyanide, Petitioner told police that he used the cyanide to control groundhogs on the property. A funeral home employee, however, insisted he had no knowledge of a groundhog problem . . . ." Doc. 22 at 4.

4.    "The police learned that Petitioner previously worked for the Lorain County Coroner." Doc. 22 at 5.

5.    "Petitioner stipulated he received just over $50,000 as proceeds from life insurance policies taken on [Mrs. Girts's] life. The State tied this money to Petitioner's purchase of a house and his desire to invest $10,000 and become a silent partner in the funeral home." Doc. 22 at 7.

25

6.      "Respondent does raise issues relating to the doctrine of procedural default."  Doc. 22 at 19.

7.      "The undersigned [magistrate judge] concurs with the Ohio Court of Appeals in its assessment that the prosecutor lacked the constitutionally sufficient level of intent to cause a mistrial during Petitioner's first criminal trial necessary to implicate the protection against double jeopardy . . . Further, the undersigned [magistrate judge] agrees with the Ohio Court of Appeals when it concluded that the State's failure to call the prisoner as a rebuttal witness, in the first trial, amounted to negligence . . . ."  Doc. 22 at 25-26.

8.      " . . . Petitioner not only obtained and possessed cyanide through his association with his commanding officer in the Army reserves, but also demonstrated a familiarity with the poison and its effect on the body . . . Petitioner's past employment with the Lorain County Coroner's Office . . . ."  Doc. 22 at 30.

9.      "Petitioner committed a procedural default in his state court proceedings because he failed to make a contemporaneous objection to the prosecutor's comments during final argument."  Doc. 22 at 32.

10.     "The undersigned [magistrate judge] finds that the three cited remarks by the prosecutor in his closing argument were not 'manifestly intended by the prosecutor as a comment on the defendant's failure to testify or were of such a character that the jury would naturally and reasonably take them to be comments on the failure of the accused to testify."  Doc. 22 at 40.

11.     "Inasmuch as the statement offered by Borden was not consistent with the prior testimony of Bloesinger, it was properly stricken from the record."  Doc. 22 at 46.

12.     ". . . holding that it is not *per se* error for the trial judge to permit alternate jurors to remain in the jury room during deliberations . . . ."  Doc. 22 at 49.

13.     "The Court of Appeals concluded that, other than Petitioner's self-serving affidavit, there was no demonstration that the outcome of the trial would have been different."  (Regarding the alleged insufficiency of trial counsel's performance).  Doc. 22 at 50.

**C.      The R&R's Conclusions As To Each Of Girts's Grounds For Relief Are Well-Taken And Adopted By This Court.**

As outlined above, the R&R extensively reviewed each of Girts's six grounds for relief, thereafter recommending complete dismissal of Girts's petition.  Having considered the R&R in its entirety – as well as

26

Girts's objections – the Court agrees in whole with the R&R's ultimate conclusion that Girts's petition should be dismissed. The Court finds it unnecessary to provide an independent substantive analysis as to each rejected ground for relief.

Because the Court disagrees with some of the R&R's reasoning as it pertains to Girts's third ground for relief (i.e., alleged 5th Amendment violations), however, it addresses that ground separately below, but still concludes that dismissal of Girts's petition is warranted. In conjunction with the Court's consideration of Girts's objections, therefore, and subject only to the Court's additional comments set forth in Section IV-C *infra*, the Court hereby **ADOPTS** the R&R's reasoning and recommendation that Girts's petition be dismissed with prejudice.

### 1.  Objections 1-11 and 13 Do Not Threaten The R&R's Conclusions.

Objections 1 - 5 and 8 challenge specific factual findings made by the state courts below. As previously noted, however, "a determination of a factual issue made by a state court shall be presumed correct." 28 U.S.C. § 2254(e)(1). Accordingly, as did the magistrate judge, this Court *must accept* the factual record as articulated by the state courts. Objections 1-5 and 8, therefore, must be summarily disregarded as being purely factual in nature.

Objections 6, 9, 10 and 13 relate to Girts's "prosecutorial misconduct" and "ineffective assistance of counsel" grounds for relief (i.e., grounds three and five), and are, therefore, subsumed by the Court's discussion *infra* of those grounds.

Objections 7 and 11 are simply not well taken, and the Court summarily adopts the R&R's resolution of the legal issues challenged in these objections based on the magistrate judge's well-reasoned analysis in connection therewith.

### 2.    Objection 12 Is Not Well-Taken, But Warrants Brief Discussion.

As to this issue, Girts's objection simply restates his unpersuasive legal argument that the state courts incorrectly concluded that allowing alternate jurors to sit-in on the jury's deliberations does not render a conviction reversible *per se*.  In this regard, Girts's objection states nothing new and does not "object" to the magistrate judge's recommendation – it simply restates his prior argument.  In any event, because this argument rises in connection with an ineffective assistance of counsel ground, it can only have a meaningful effect here if Girts can demonstrate not only that his counsel's failure to object (which presumes an at-trial objection was warranted) constituted "deficient" representation, but that the deficiency adversely affected (i.e., prejudiced) the outcome of the trial.  It is not enough that the legal argument alone have merit – which it does not, in any event.  Girts's filings (including his objections) simply presume prejudice in the presence of a procedural violation, but do not articulate how the jury's deliberations were, or even arguably were, affected by the alternate juror's presence during the deliberations.

Because the Court agrees with the magistrate judge's AEDPA determination that the state courts' conclusions on this issue were not unreasonable, this ground for relief (and its attendant objection) is without merit and must be rejected.  Nevertheless, because this is an important issue both in the state and federal courts – whose rules currently differ – a brief discussion is warranted.

As noted by the Eighth District's opinion, the record in this case clearly demonstrates that some circumstance gave the parties and the trial court reason to believe that a primary juror may not have been able to continue to deliberate beyond one day.  *See* Doc. 17, Ex. 23 at pp. 26-27.  Based on that circumstance, and not some judicial oversight (with inherent prejudicial effect) as Girts would have this Court believe, the

28

parties and the trial court <u>agreed</u> that the alternate jurors should remain with the jury during its deliberations.[8] In this regard, the trial court had an identifiable reason for permitting the alternates to sit in on the deliberations, despite Ohio Rule of Criminal Procedure 24(F)'s provision that alternates be discharged prior to the jury beginning its deliberations.

Interestingly, the Ohio and federal rules applicable to this issue *currently* differ.  As noted, Ohio Criminal Rule 24(F) provides that alternates be discharged once the jury begins its deliberations.  Federal Rule of Criminal Procedure 24(c), however, now provides that alternate jurors may be retained by the trial court so long as the court ensures that they do not participate in the jury's deliberations until and unless instructed by the Court to do so (i.e., a replacement occurs).[9]  Regardless, state and federal courts agree that, despite a rule to the contrary (i.e., the current Ohio rule, or more restrictive former versions of the federal rule), an alternate juror's presence during the jury's deliberations does not <u>automatically</u> invalidate the jury's verdict. Instead, a verdict is only in jeopardy if a defendant can demonstrate actual prejudice – most commonly by demonstrating an actual participation in, or an otherwise "chilling" effect on, the deliberations.  Courts are also encouraged to specifically instruct the jury and the alternates that it is imperative that the alternates not participate until instructed to do so, if at all.  *See U.S. v. Olano*, 507 U.S. 7256 (1993); *Roberts v. Carter*, 337 F.3d 609 (6th Cir. 2003); *Manning v. Huffman*, 269 F.3d 720 (6th Cir. 2001).

Accordingly, it is clear that the presence of alternates during the jury's deliberations does not inherently prejudice a defendant.  Rather, a defendant bears the burden of demonstrating prejudice and cannot

---

[8]     As further noted in the Eighth District's opinion, the alternate jurors were given an explicit instruction not to participate in the deliberations.  There is no evidence that they did, or that the jury was in any way affected by their presence.

[9]     Prior to 1999, the federal rules did not allow alternate jurors to sit-in on deliberations.

successfully blindly assume a detriment.  Notwithstanding the foregoing, however, the Court believes that judicial discretion on this issue should err on the side of caution and that courts generally should *not allow* alternate jurors to observe the jury's deliberations because the benefit of doing so (i.e., saving time if a juror is replaced) is outweighed by the potential detriment (i.e., actual prejudice to the defendant or an invitation for all defendants to challenge otherwise valid verdicts).  Except in cases where the deliberations are expected to be significantly long, it is not unreasonable to ask a jury to begin anew if an alternate is eventually asked to serve.  In as much as the law is clear, and the record in this case is devoid of any evidence of prejudice (or substantiated argument of prejudice), the presence of alternate jurors during the jury's deliberations cannot upset Girts's conviction.

## IV.    DISCUSSION

As noted previously, the Court only addresses in detail Girts's third ground for relief due to the Court's limited disagreement with the R&R's analysis of that ground.  Girts argues in his third ground for relief that his conviction should be reversed due to inappropriate comments made during the State's closing argument, which, he argues, amounted to violations of his 5th Amendment rights.  In sum, Girts argues that the State violated his 5th Amendment right to remain silent by commenting on the fact he chose to do so both before and during his trial.  A portion of Girts's fifth ground for relief argues that his trial counsel's failure to object to the allegedly inappropriate comments amounted to a violation of Girts's 6th Amendment right to effective assistance of counsel.  In addition to raising ineffective assistance of counsel as an independent ground for relief, Girts asserts that ground as "cause" for his procedural default of his 5th Amendment ground (i.e., his third ground for relief).

30

Given the procedural default considerations further outlined below, and the unique procedural background of this case, whether Girts's 5th Amendment ground is reviewable, much less meritorious, is contingent upon the portion of his 6th Amendment ground relating to his counsel's failure to object to the alleged prosecutorial misconduct.  Accordingly, these two grounds for relief necessarily collapse into each other, as does the Court's analysis below.

A.      **Standard Of Review.**

Because Girts filed his petition on February 12 , 2002, the Antiterrorism and Effective Death Penalty Act of 1996  ("AEDPA") applies.  *See Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).[10]  In pertinent part, the AEDPA provides:

> (d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

After passage of the AEDPA, various circuit courts accorded differing interpretations to the standard

---

[10]      As to claims that survive "procedural default" scrutiny, the AEDPA applies if the petition was filed <u>after</u> the Act's <u>April 26, 1996</u> effective date.

31

of review applicable under § 2254(d).[11]  In response to the nationwide variation accorded to the *habeas corpus* standard of review, the Supreme Court elaborated on the meaning of the AEDPA's statutory language, announcing that the recently revised *habeas* statute "places a new <u>constraint</u> on the power of a federal *habeas* court to grant a state prisoner's application for a *writ of habeas corpus* with respect to claims adjudicated on the merits in state court." *Campbell v. Coyle*, 260 F.3d 531, 539 (6th Cir. 2001) (*quoting Williams v. Taylor*, 529 U.S. 362, 412 (2000) (emphasis added).

The Supreme Court clarified the language of § 2254(d)(1), and held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion <u>opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts</u>. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but <u>unreasonably applies</u> that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-413 (emphasis added).  The Court offered additional guidance regarding the meaning of "unreasonable application." A state-court opinion can also engender the 'unreasonable application' of Supreme Court precedent if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Williams*, 529 U.S. at 409.  Further, the Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was <u>objectively unreasonable</u>." *Id.* (Emphasis added).  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may

---

[11]     *Compare Green v. French*, 143 F.3d 865 (4th Cir.1998), *and Nevers v. Killinger*, 169 F.3d 352, 358 (6th Cir. 1999), *with Long v. Humphrey*, 184 F.3d 758 (8th Cir.1999), *and Matteo v. Superintendent, SCI Albion*, 171 F.3d 877 (3d Cir. 1999).

not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.*

Additionally, federal *habeas* courts are obliged to "accept a state court's interpretation of that state's statutes and rules of practice."  *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  Similarly, a federal court is not free to ignore the pronouncement of a state appellate court on matters of state law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000).

###    B.    Exhaustion and Procedural Default.

A federal *habeas* petitioner must satisfy the doctrines of exhaustion and procedural default before a federal court can review the merits of his grounds for relief.  In this case, the Respondent argues, and the R&R concludes, that Girts's third ground for relief is procedurally defaulted, and, therefore, not reviewable on the merits by this Court.  The general legal guidelines pertaining to these doctrines are as follows.

The exhaustion doctrine bars federal review of grounds for relief that were not raised by the petitioner in his direct appeal.  Regardless of how a petitioner seeks to use a legal ground for relief – whether substantively or otherwise – that ground must have been exhausted below.  In this case, Girts ultimately argues that his 5th Amendment ground is not procedurally defaulted because he can satisfy the "cause and prejudice" exception to the procedural default doctrine based on his trial counsel's failure to object to the alleged prosecutorial misconduct, which Girts argues also amounted to a substantive violation of his 6th Amendment right to effective assistance of counsel.  Accordingly, Girts's 6th Amendment ground for relief – which is offered both procedurally and substantively – must have been exhausted below in order for Girts to rely upon it in connection with the procedural default analysis relating to his 5th Amendment ground.  Obviously, his 5th

33

Amendment ground must similarly have been exhausted below.

Among other places, Girts asserted ineffective assistance of counsel (i.e., a 6th Amendment violation) as his fourth assignment of error in his direct appeal to the Eighth District, and as his seventh proposition of law in his appeal to the Supreme Court of Ohio. Similarly, among other places, Girts asserted prosecutorial misconduct (i.e., a 5th Amendment violation) as his tenth assignment of error in his direct appeal to the Eighth District, and as his eighth proposition of law in his appeal to the Supreme Court of Ohio. Girts's 5th and 6th Amendment grounds for relief, therefore, have been exhausted and have not been waived for purposes of Girts's present petition.

The procedural default doctrine, on the other hand, bars federal review of a *habeas* ground for relief if the state courts below declined to address the merits of that ground because of the petitioner's noncompliance with state procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In that regard, when the last explained state court decision rests upon procedural default as an alternative ground, a federal district court is not required to reach the merits of a *habeas* petition's claims. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). Accordingly, any claim that the Court determines was procedurally defaulted in the state courts generally will not be reviewable in a federal *habeas* proceeding.

Two exceptions exist, however. A ground that has been otherwise procedurally defaulted can be rescued if the petitioner demonstrates: 1) *adequate cause* for the default, and that *actual prejudice* resulted from the alleged federal law violation; or 2) that failure to consider the claim will result in a fundamental *miscarriage of justice*. *See Coleman v. Thompson*, 501 U.S. 722, 751 (1991) (emphasis added). As to the first, "cause" is a *legitimate excuse* for the default, and "prejudice" is *actual harm* resulting from the alleged constitutional violation. *See Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert.*

34

*denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show sufficient cause for his procedural default, a reviewing court need not address the prejudice prong.  *See Smith v. Murray*, 477 U.S. 527 (1986).

To determine whether a ground has been procedurally defaulted, a federal court must determine whether the state courts below addressed the ground's merits.  To make that determination, federal courts must rely on the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *See Coleman*, 501 U.S. at 735.  Applying this presumption, and considering the "cause and prejudice" exception identified above, the Sixth Circuit established a four-step analysis in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), to determine whether a ground has been procedurally defaulted.  The *Maupin* test requires federal courts to determine:

> (1)    whether the petitioner failed to comply with an applicable state procedural rule;
>
> (2)    whether the state courts actually enforced the state procedural sanction;
>
> (3)    whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and
>
> (4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

As relevant here, the Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an "adequate and independent" state ground.  *See, e.g., Scott v. Mitchell*, 209 F.3d 854, 867-68 (6th Cir. 2000).  Moreover, the Sixth Circuit views a state appellate court's review for "plain error" as the enforcement of a procedural violation made at the trial level.  *See, e.g., Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Accordingly, because Girts never objected to the prosecutor's allegedly inappropriate comments during his closing argument, and because the Eighth District employed a "plain error" standard of review to

35

Girts's 5th Amendment assignment of error in his direct appeal because his counsel failed to object, the first three *Maupin* factors are clearly satisfied.  Indeed, the parties agree that Girts's third ground for relief is procedurally defaulted unless he demonstrates  "cause" and "prejudice" under the fourth factor, or that failure to consider the claim will result in a fundamental miscarriage of justice.  Because the Court's determination of the "cause and prejudice" factor (i.e., a procedural determination) requires substantive consideration of the alleged prosecutorial misconduct and alleged  ineffective assistance of counsel, the Court collapses below its procedural and merits analyses of these two issues.

> **C.    Girts's  Third  Ground  For  Relief  Is  Procedurally  Defaulted  Based  On  This  Court's Application Of The AEDPA.**

Girts claims that sufficient "cause" and "prejudice" exist to avoid procedural default of his third ground for relief.  He argues that the "cause" for his default (i.e., the failure to object at trial to the prosecutor's statements) was his trial counsel's ineffectiveness, which itself presents a potential constitutional violation.  *See Strickland v. Washington*, 466 U.S. 668 (1984) (setting forth a two-pronged test for determining whether a defendant has been constitutionally deprived of effective assistance of counsel).  The Respondent argues that 1) ineffective assistance of counsel is not a valid legal basis to satisfy the "cause" requirement, and 2) even if it was, Girts cannot adequately demonstrate that his counsel acted in a <u>constitutionally inadequate</u> manner such that the "cause" element is satisfied or his substantive 6th Amendment ground is well taken.

The Court rejects the Respondent's first argument because the Sixth Circuit has expressly acknowledged that ineffective assistance of counsel, if properly established, can satisfy the "cause" element. *Washington v. Hofbauer*, 228 F.3d 689 (6th 2000); *see also*, *Gravley v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996) ("Attorney error that amounts to ineffective assistance of counsel can constituted 'cause' under the

cause and prejudice test."). Whether Girts's counsel's failure to object at trial amounted to a constitutional violation, therefore, becomes the pivotal inquiry here.

The magistrate judge concluded that Girts had not sufficiently established "cause" by way of ineffective assistance of counsel. Specifically, the magistrate judge concluded both that counsel was not ineffective by failing to object to the prosecutor's closing argument and that, even if he was ineffective, his failure to object to the prosecutor's comments likely *had no material effect on the jury's ultimate decision to convict*. The magistrate judge concluded, therefore, that Girts's third ground for relief was procedurally defaulted. He then went on to analyze the merits of that ground, however, and further concluded that the prosecutor's comments did not violate Girts's 5th Amendment rights because the Eighth District's decision denying Girts's prosecutorial misconduct argument on direct appeal was not an unreasonable application of clearly established federal law. Rather, he found it to be consistent with the body of federal law regarding the right to a fair trial and the right against self incrimination.

For the reasons that follow, the Court agrees with the magistrate judge's ultimate conclusion that Girts's 5th Amendment ground was procedurally defaulted based on Girts's inability to demonstrate "cause" *via* ineffective assistance of counsel. The Court disagrees, however, with the his conclusion that the prosecutor's comments were not improper. To the contrary, the Court believes that the prosecutor engaged in prosecutorial misconduct. Because the Court's ability to substantively review that issue is limited by the procedural default doctrine and the narrow strictures of the AEDPA, however, the Court is compelled to conclude that Girts's conviction must be affirmed, regardless of that misconduct. Because Girts cannot establish a 6th Amendment ineffective assistance of counsel claim – thereby satisfying the "cause" factor of the *Maupin* test and rescuing his otherwise procedurally defaulted 5th Amendment ground – or that a fundamental

37

miscarriage of justice will result, Girts's 5th Amendment ground for relief, though <u>potentially</u> meritorious if reviewed *de novo*, is procedurally defaulted and must be dismissed.

### 1.    Prosecutorial Misconduct.

Absent prosecutorial misconduct, Girts's counsel could not have been expected to object. Accordingly, the Court's first determination must be whether prosecutorial misconduct even occurred. Because the AEDPA's narrow standard of review applies only to a federal *habeas* court's review of claims <u>that have not been procedurally defaulted</u>, the Court's analysis of the prosecutorial misconduct issue <u>at this juncture</u> – i.e., prior to determining whether a procedural default occurred – is much broader.

Girts complains that three statements made by the prosecutor during closing argument violated his 5th Amendment rights.  Those statements are as follows:

> Again these are his words. And the words that you heard from these folks supplied by him are unrefuted, and they are uncontroverted. There has been no evidence offered to say that these people are incorrect.  None at all.

Doc. 16 (Trial Transcript) at 1347.

> . . . with respect to the source [of the cyanide], the defendant had no less than three occasions to tell the police that he had ordered the cyanide.

Doc. 16 (Trial Transcript) at 1410.

> Ladies and gentlemen, we don't have to tell you how it was introduced into her system.  We know that it was ingested. And there is only one person that can tell you how it was introduced, and that's the defendant.

Doc. 16 (Trial Transcript) at 1414.

In assessing whether alleged misconduct amounts to a constitutional violation, the Court must view it in light of the totality of the circumstances. *See Hayton v. Egeler*, 555 F.2d 599, 604 (6th Cir. 1977). The Court must first determine if the prosecutor's comments were "improper." *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). Then it must determine whether the comments were sufficiently "flagrant" to warrant reversal. As prefaced above, given the procedural context of the Court's analysis here – i.e., as a prerequisite determination in the context of analyzing Girts's 6th Amendment ineffective assistance of counsel ground – the Court's *de novo*-like conclusions on this issue are not determinative of the merits of Girts's 5th Amendment ground because, ultimately, that ground is procedurally defaulted.[12]

### a.    The Statements Were Clearly "Improper."

Unlike the state appellate court and the magistrate judge, this Court believes that the prosecutor's repeated comments on Girts's decision to remain silent – both before and during the trial – crossed the 5th Amendment line and constituted prosecutorial misconduct. Though of no practical effect in this case because the Court does not ultimately believe that the outcome of the trial clearly would have been different in the absence of the prosecutor's comments (a necessary finding given the procedural default at issue), the Court deems a brief discussion on this issue worthwhile. The prosecutor made, not one, but three comments relating to Girts's decision not to provide information to the police (i.e., during the investigation) or the jury (i.e., during the trial). In sum, the Court simply disagrees with the Eighth District and the magistrate judge's view of these

---

[12]    Were the Court to address the merits of Girts's 5th Amendment ground <u>as a non-defaulted claim</u>, this Court would be required to give great deference to the state court decisions on that issue. While this Court finds that prosecutorial misconduct occurred, because the Court is not doing a merits assessment of that claim, it expresses no opinion on the question of whether the state court's conclusions to the contrary were unreasonable withing the meaning of the AEDPA.

comments.

As to the first two statements, though the Court summarily disagrees with the Eighth District and magistrate judge's conclusions, it concedes that they are the least offensive of the three and that room for argument exists as to whether they qualified as permissible "summations" of evidence or testimony presented. As to the third statement, however, the Court finds that it clearly crossed the line and commented on Girts's silence. In response to defense counsel's closing argument, in which he pointed out that the State did not prove how Girts would have had the opportunity to introduce the poison into Mrs. Girts's food, the prosecutor stated:

> Ladies and gentlemen, we don't have to tell you how it was introduced into
> her system. We know that it was ingested. And there is only one person that
> can tell you how it was introduced, and that's the defendant.

Doc. 16 (Trial Transcript) at 1414. To say that the prosecutor's comment is appropriate because it was in response to a defense argument that the State had presented no proof of how the poison was ingested – which was the view taken by the Eighth District – is illogical. Characterizing the prosecutor's statement as a "comment on the evidence" enables the State to take the deficiencies in its own case, which the defense has every right – indeed, every obligation – to point out, and utilize those deficiencies against Girts. So used, such a statement is anything but a comment on the evidence. For this reason, the Court believes the prosecutor intended to comment (especially with regard to the third statement) on Girts's failure to testify and that the jury likely understood the comments to have been offered for that purpose. *Gall v. Parker*, 231 F.3d 265 (6th Cir. 2000).

### b.    The Statements Were Sufficiently "Flagrant."

Upon a finding of impropriety, the Sixth Circuit utilizes four factors to determine whether a

40

prosecutor's comments are "flagrant" such that they can be said to have affected a petitioner's substantial rights:  1) the likelihood that the remarks would mislead the jury or prejudice the accused; 2) whether the remarks were isolated or among a series of improper statements; 3) whether the remarks were deliberately or accidentally presented to the jury; and 4) the total strength of the evidence against the defendant.  *See United States v. Carroll*, 26 F.3d 1380, 1385 (6th 1994).

***Flagrancy Factor #1:        Did the Statements Misled the Jury and Were They Prejudicial?***

The Court must consider whether the prosecutor's comments were likely to mislead the jury or prejudice the defendant.  *U.S. v. Carter*, 236 F.3d 777, 785 (6th Cir. 2001).  As the Sixth Circuit has made clear in its harmless error review of cases applying the *Carroll* factors, there exists a strong presumption that prejudice flows from unconstitutional comments made by a prosecutor.  *See Eberhardt*, 605 F.2d at 279.  "It is not enough for the reviewing court to feel that the evidence is strong and that the defendant probably would have been convicted anyway."  *Id.*  "That is a decision for the jury to make, unaffected by improper argument or impermissible inferences urged by the prosecutor."  *Id.*  Accordingly, a presumption exists at the outset that the improper comments misled the jury and were prejudicial – for purposes of defining the comments as "flagrant."

Utilizing plain error review, the Sixth Circuit has recognized that improper insinuations or suggestions are apt to carry great weight against a defendant "because a jury generally has confidence that a prosecuting attorney is faithfully observing his obligation as a representative of a sovereignty."  *Carter*, 236 F.3d at 785-86.  The *Carter* court asserted that there is an even greater potential for misleading the jury if the error was "central to the Government's case."  *Id.* at 786 (prosecutor's improper statements included misstatements of

41

a witness's testimony and personal attacks on defense counsel's truthfulness).  Here, the method by which the cyanide was ingested was "central" to the State's case, especially to its effort to refute the impact of Girts's absence from the jurisdiction at the time of the murder.  There was great potential for misleading the jury, then, when the prosecutor made references to Girts as being the only person who could explain <u>how</u> the cyanide was ingested.  As the State's representative, the prosecutor has a "duty to refrain from improper methods calculated to produce a wrongful conviction [and to] use every legitimate means to bring about a just one." *Id.*

Furthermore, prosecutors have "immense power and influence" when bringing a case against an accused. *Gravely*, 87 F.3d at 782. This power is usually kept in check by safeguards that proscribe the state from violating the accused's constitutional rights. *Id.* "However, regrettably, in some instances a prosecutor abuses his or her power and in so doing, diverges from the goal of seeking truth and justice." *Id.*

Also, juries are composed of lay persons who are unfamiliar with the rules of evidence, and, in many cases, unaware of the basic constitutional rights afforded to criminal defendants.  In this case, the jury would have had no independent knowledge that a prosecutor is prohibited from commenting on a defendant's silence. Additionally, "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the government's judgment rather than its own view of the evidence." *Gall*, 231 F.3d at 312 (holding that prosecutor's improper comments misled the jury and prejudiced the defendant).

Finally, the jury instruction provided at the conclusion of Girts's trial, which instructed the jury that Girts had a right not to testify, and that his failure to testify could not be used by the jury for any purposes, was likely insufficient to cure the damage caused by the prosecutor's comments. *Compare Carter,* 236 F.3d at 787 (ruling that general instruction given at end of trial, rather than at the time the comments were made, did

not cure the misconduct), *with Galloway*, 316 F.3d at 633 (ruling that judge's "admonition" expressing specific disapproval of prosecutor's improper comment was sufficient to constitute a curative instruction). "Ordinarily a court should not overturn a criminal conviction on the basis of a prosecutor's comments alone, especially where the district court has given the jury an instruction that may cure the error." *Carter*, 236 F.3d at 787. Juries are generally presumed to understand and follow the judge's instructions. *Id.* Where, however, the only possible curative instruction occurred during the judge's general, routine jury instruction <u>with no explicit reference to the improper comments</u>, there can be no basis upon which to find that the instruction mitigated the jury's tendency to prejudicially consider the unconstitutional comments. *See Carter*, 236 F.3d at 787-88. Only if the trial judge had given an instruction <u>at the time the comments were made</u>, specifically mentioning the improper comments, would the instruction be potentially curative. *See id.*

A defendant's presumption of prejudice, the prosecutor's role as a representative of the sovereignty, the immense power and influence the prosecutor has over a jury, the fact that juries are often unaware of basic constitutional law, and the absence of a prompt, specific curative instruction demonstrates that the prosecutor's comments in this case likely misled the jury into believing that Girts's silence amounted to guilt.

> ***Flagrancy Factor #2:         Were the Comments Isolated or Among a Series of Improper Comments?***

Next, the Court considers the frequency of the prosecutor's references to Girts's silence. *See Gravely*, 87 F.3d at 789; *Carter*, 236 F.3d at 788; *Hearn*, 708 F.2d at 1077; *Eberhardt*, 605 F.2d at 279. "[P]rejudice may be magnified by the cumulative effect of repeated improper conduct." *Eberhardt*, 605 F.2d at 277 (quoting *U.S. v. Smith*, 500 F.2d 293, 297 (6th Cir. 1974)). Although the jury is usually more often misled, and the defendant more often prejudiced, by repeated or extensive improper comments, "[i]t only takes

43

a single comment . . . to remind a jury that the defendant has not testified and to fix in the jurors' minds the impermissible inference that the defendant is guilty merely because of his exercise of that right." *See Gravely*, 87 F.3d at 789 (prosecutor improperly commented on silence throughout cross-examination and in closing statements); *Hearn*, 708 F.2d at 1077-78 (prosecutor's comments were made during opening statements and repeated during closing statements); *compare Eberhardt*, 605 F.2d at 279 ("relatively brief and [un]repeated" comment was prejudical partly because judge did not give a strong, prompt curative instruction) *with Greer v. Miller*, 483 U.S. 756, 766 (1987) (single comment followed by prompt objection and two curative instructions was not prejudicial).

In this case, the prosecution commented on Girts's silence not once, but <u>three times</u> during closing arguments. Although there are no allegations that improper comments were made during opening statements, or on cross-examination, the cumulative effect of all three statements may very well have sufficiently "[fixed] in the jurors' minds the impermissible inference that the defendant is guilty." *See Eberhardt*, 605 F.2d at 279. In *Carter*, *supra*, the court stated that simply because the improper comments were made during closing arguments did not render them any less problematic than if they had been made elsewhere in the trial. *Id.* at 789.

Here, the prosecutor made all three comments during closing argument. However, as previously noted, unconstitutional comments are treated equally, regardless of when they are made, and will not be viewed as less prejudicial if only made during closing arguments. *See Tarwater*, 308 F.3d at 511 (stating that the prosecutor "may not comment on a defendant's post-arrest silent in their case in chief, on cross-examination, or in closing arguments") (citing *Doyle v. Ohio*, 426 U.S. 610, 619-20 (1976)). Consequently, it is entirely possible that the prosecutor's comments misled the jury, regardless of whether they are viewed

44

cumulatively or as three separate accounts.

**Flagrancy Factor #3:**              **Were the Comments Deliberately Placed Before the Jury?**

Next, the Court considers whether the comments were deliberately or accidentally placed before the jury. *See Galloway*, 316 F.3d at 632; *Tarwater*, 308 F.3d at 511; *Carter*, 236 F.3d at 790; *Hearn v. Mintzes*, 708 F.2d at 1077. In *Hearn*, the prosecution attempted to justify its improper comments by arguing that they were merely intended to respond to defense counsel's promise that the victim's testimony would be disputed by the defendant. *See Hearn*, 708 F.2d at 1077. The court rejected that argument, pointing out that the trial record showed that the defense made no such "promise" during its opening statement. *Id.* The court ruled that the prosecutor intended to comment on the defendant's silence, or at least intended that his comment be interpreted by the jury as drawing attention thereto. *Id.* at 1077-78.

Here, Girts's counsel never mentioned anything in his opening statement about Girts testifying or not testifying. Tr. at 511-15. Throughout his opening statement, Girts's counsel merely made general statements about what the jury would see and hear throughout the trial. No promises were made to the effect that Girts himself would testify. In such circumstances, the prosecutor's comments regarding Girts's silence at trial were simply unjustifiable.

In *Carter*, the court stated that the "very repetition with which the prosecutor [made improper comments], in and of itself, reveals that such comments were not accidentally placed before the jury. *Carter*,

45

236 F.3d at 791.  As previously discussed, the prosecutor in this case commented on Girts's silence three times during his closing argument.  The mere fact that the prosecutor made three similar comments, therefore, is a sufficient basis upon which to conclude that he did so intentionally, and in no way "accidentally" placed the comments before the jury.

<strong><em>Flagrancy Factor #4:</em></strong>        <strong><em>What Was the Strength of the Evidence Against the Defendant?</em></strong>

The fourth *Carroll* factor involves the overall strength of the State's evidence.  *See Carter*, 236 F.3d at 791.  To sustain a finding of harmless error, which is the standard the Court is to employ in this context, the Sixth Circuit has repeatedly required the State's evidence to be "overwhelming."  *See Galloway*, 316 F.3d at 632; *Tarwater*, 308 F.3d at 511; *Carter*, 236 F.3d at 791; *Hearn*, 708 F.2d at 1077; *Eberhardt*, 605 F.2d at 279.  Though the State's evidence in this case was certainly strong, the Court cannot say that it was so overwhelming as to overcome the impropriety of the prosecutor's comments.  This is true for a number of reasons.

First, Girts was out of town at the time of his wife's death.  While it may be true that, in cases of death by poison, it is not absolutely necessary that the killer be in close proximity the victim at the time of death, his absence from the jurisdiction is a strong point of his defense.  As was undoubtedly the position of the prosecution,  Girts may have placed poison in food, beverage, or other substances that he knew his wife would ingest in the days prior to her death.  On the other hand, there was serious dispute, and certainly room for disagreement, as to exactly how the poison was ingested.  The only available explanation – that she might have eaten poisoned pasta salad that was in the refrigerator – is suspect because Mrs. Girts's sister ate from the same bowl of pasta salad without harmful consequence.

46

Second, room for disagreement exists as to the cause of death.  During the first autopsy, the coroner found "reddening of the skin, which would typically be found in a person exposed to carbon monoxide."  *See* R&R at p. 2.  The coroner could not find evidence of carbon monoxide exposure, however, and, thus, listed no cause of death.  Furthermore, the first set of toxicologists' tests for cyanide presence failed to produce results, allegedly due to compromised reagents.  *See id.*  Although a second test did result in a positive indication of cyanide, several of the symptoms associated with cyanide poisoning were not present.  *See id.* at 7-8.

At least one expert noted, moreover, that one of the two symptoms present could be explained by the immediate refrigeration of the decedent's body after being taken from the warm bathtub in which she was found.  *See id*. at 8.  Combining these facts with the questions relating to how cyanide could have been ingested raises the question of whether cyanide poisoning was the cause of death.  Though these arguments certainly do not present a clear case for acquittal, especially in light of evidence relating to Girts's motive and access to cyanide, they are not frivolous.  In light of these non-frivolous arguments, while the State's evidence against Girts was certainly strong, it is difficult to characterize it as "overwhelming."

For all these reasons, the Court finds that prosecutorial misconduct did occur during closing argument.  Because the ultimate impact of the prosecutorial misconduct claim for relief turns on Girts's ineffective assistance of counsel claim, however, the Court's view at this stage that prosecutorial misconduct occurred is not determinative of Girts's right to the relief he seeks.

### 2.    Girts's 6th Amendment Ineffective Assistance Of Counsel Ground Fails.

Having determined that the prosecutor's comments were improper, the Court now turns to the issue of  whether defense counsel's failure to object to that misconduct violated the Supreme Court's 6th

47

Amendment "effective assistance of counsel" standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), such that Girts's 5th Amendment ground can avoid procedural default in this case.  More precisely, pursuant to the AEDPA, the Court must determine whether the state courts' application of the *Strickland* standard, when it found that Girts's counsel's alleged deficiency did not rise to the level of constitutional "ineffective assistance," was an unreasonable application of *Strickland*.  Though the Court finds that an objection to the comments certainly would not have been frivolous, because the comments were improper, it cannot say that the state appellate court's conclusion – that no *Strickland* violation occurred – was based on an unreasonable application of federal law.  Accordingly, despite this Court's view that misconduct occurred, its narrow review under the AEDPA in this context prevents a finding of "cause" to rescue Girts's third ground from procedural default.

An essential ingredient of the 6th Amendment right to counsel is that counsel provide constitutionally effective assistance.  *See Powell v. Alabama*, 287 U.S. 45, 57 (1932).  In *Strickland v. Washington,* 466 U.S. 668 (1984) , the Supreme Court established that the benchmark of effectiveness "must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686.  The *Strickland* Court set out a two-part inquiry to determine whether trial counsel's assistance is constitutionally ineffective.

First, a defendant must show that counsel's performance was "deficient," involving "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687.  This requires that counsel's conduct "fell below an objective standard of reasonableness," *Tucker v. Presesnik*, 181 F.3d 747 (6th Cir. 1999), and that counsel's "identified acts and omissions were outside the range of professionally competent assistance." *Id*. at 690.  In making this determination, a court must "indulge

48

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and it is the defendant who "bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy." *Tucker*, 181 F.3d at 754 (citation omitted). Courts must not view a trial in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *See McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996). The Sixth Circuit has on several occasions found that a counsel's failure to object to prosecutorial misconduct constitutes defective performance when that failure is due to clear inexperience or lack of knowledge of the controlling law, rather than reasonable trial strategy. *See, e.g., Gravely v. Mills*, 87 F.3d 779, 785-86 (6th Cir. 1996); *Rachel v. Bordenkircher*, 590 F.2d 200, 204 (6th Cir. 1978).

Second, even if counsel's performance is deemed deficient, a defendant must show that those deficiencies were prejudicial to the defense. *See Strickland*, 466 U.S. at 692. To establish prejudice for this purpose, as distinct from the standard previously discussed in connection with determining whether a prosecutor's comments were "flagrant," a defendant must demonstrate that there "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

Because the AEDPA applies to all substantive grounds for relief in this case, the Court must assess the state court's application of *Strickland* to the facts of this case to determine whether that application was objectively unreasonable. *See Williams v. Taylor*, 529 U.S. 362 (2000).

### a. Girts's Trial Counsel's Performance Was Deficient.

Based on this Court's prior determination that the prosecutor's comments crossed the 5th Amendment line, it is axiomatic that defense counsel's failure to object constituted "deficient" representation for purposes

of a *Strickland* analysis.  Indeed, the state courts and the magistrate judge employed the same logic – only in the opposite direction – to find that no 6th Amendment violation could have occurred in the <u>absence</u> of prosecutorial misconduct.

Because the Court disagrees with the underlying legal conclusion, however, a comparison of their analyses and the Court's analysis on this point would not be an "apples to apples" comparison for purposes of AEDPA review.  Because the Court finds that misconduct occurred, it must likewise characterize defense counsel's responsive inaction as "deficient."

### b.     Girts Cannot Demonstrate Prejudice Under *Strickland*.

Whether the above deficiency rose to a constitutional level warranting *habeas* relief requires a finding of *Strickland* prejudice.  Because the Eighth District concluded that no misconduct occurred, it understandably did not conduct a formal 6th Amendment *Strickland* analysis.  It determined, nevertheless, that "nothing in the record suggests that, but for these comments, the verdict would clearly have been different," which is the *Strickland* prejudice standard.  Doc. 17, Ex. 23 at p. 39.  It appears, accordingly, that the Eighth District <u>did</u> address the *Strickland* prejudice prong, albeit indirectly.  Accordingly, per the AEDPA, this Court must afford deference to the Eighth District's determination and find that a reversible 6th Amendment violation occurred <u>only</u> if that determination arose from an unreasonable application of federal law.  Though the Court considers the facts of this case to be a close call, as evidenced by its analysis *supra*, and <u>may</u> have found differently if a *de novo* review were employed, the Court does not find that the Eighth District's finding of "no prejudice" was an unreasonable application of federal law.

While this Court has found that the evidence against Girts was not "overwhelming," it was strong.

Reasonable jurors clearly could have reached a guilty verdict in this case even in the absence of the prosecutorial misconduct which occurred.  The Eighth District's conclusion that the jury's verdict would not likely have been different had the prosecutor not made the comments in question, therefore, cannot be said to be unreasonable.

Given these conclusions, Girts's substantive Sixth Amendment ground for relief is not well-taken and must be dismissed.  That ground, in turn, cannot serve as sufficient "cause" for Girts's procedural default of his Fifth Amendment ground for relief, such that his default of that ground may be forgiven.  Similarly, in light of the strength of the evidence against Girts's, the Court further finds that a manifest miscarriage of justice will not result if the Court does not review the merits of Girts's defaulted ground, despite the fact the Court considers the prosecutor's comments to have been improper.

The Court is not merely splitting hairs in reaching this conclusion.  The Court's conclusion is based on drawing distinctions that it is not only legally justified in drawing, but legally obligated to draw.  As noted, the first significant distinction is between the standards it is to employ when reviewing the evidence against Girts – under the 5th Amendment, the prosecutor's evidence must be overwhelming to affect prosecutorial misconduct, while under *Strickland*, a verdict must be upheld, despite deficient performance by counsel, unless a defendant can establish a reasonable probability of a different result.  The two levels of review fundamentally differ.

The second important distinction is one dictated by the AEDPA.  The Court's 5th amendment analysis, done as part of prong one of its *Strickland* analysis, was done without deference to state court findings on that point.  The Court's analysis under prong two of *Strickland*, on the other hand, did demand deference to the

51

state court's conclusions.  These two distinction, taken together, demand different conclusions.

Girts's third ground for relief, therefore, remains procedurally defaulted and is not reviewable on the merits here.  Having already adopted the magistrate judge's reasoning and conclusions that Girts's other grounds are without merit, the Court ultimately finds that his petition mut be denied and his case dismissed.

**V.      CONCLUSION**

For the foregoing reasons, Girts's petition for a *writ of habeas corpus* pursuant to 28 U.S.C. §2254 is **DENIED** and his case is **DISMISSED**.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: July 12, 2005**